IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LILLIE MATHEWS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 09-1185 |
| | ) | |
| v. | ) | Judge David S. Cercone |
| | ) | Magistrate Judge Cathy Bissoon |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is respectfully recommended that Plaintiff's Motion for Summary Judgment (Doc. No. 10) be denied, that Defendant's Motion for Summary Judgment (Doc. No. 12) be granted, and that the administrative decision of the Commissioner of Social Security ("Commissioner") be affirmed.

### II.  REPORT

**BACKGROUND**

Plaintiff Lillie Mathews ("Mathews") protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f] on July 14, 2006, alleging disability as of June 1, 2006.  R. at 78, 81, 84, 89.  The applications were administratively denied on October 17, 2006.  R. at 48, 53.  Mathews responded on October 22, 2006, by filing a timely request for an administrative hearing.  R. at 58.  On February 8, 2008, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge James Bukes

(the "ALJ").  R. at 21.  Mathews, who was represented by counsel, appeared and testified at the hearing.  R. at 23-40.  Testimony also was taken from George Strost ("Strost"), an impartial vocational expert.  R. at 40-43.  In a decision dated April 10, 2008, the ALJ determined that Mathews was not "disabled" within the meaning of the Act.  R. at 4-17.  The Appeals Council denied Mathews's request for review on March 12, 2009, thereby making the ALJ's decision the final decision of the Commissioner in this case.  R. at 18.  Mathews commenced this action on September 1, 2009, seeking judicial review of the Commissioner's decision.  Doc. Nos. 1 & 2.[1]  Mathews and the Commissioner filed motions for summary judgment on February 3, 2010, and March 15, 2010, respectively.  Doc. Nos. 10 & 12.  These motions are the subject of this Report and Recommendation, which is being submitted in accordance with 28 U.S.C. § 636(b)(1)(B)-(C).

**STANDARD OF REVIEW**

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence."  42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).  The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185,

---

[1] This action is authorized by the first sentence of 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision *or within such further time as the Commissioner of Social Security may allow*."  42 U.S.C. § 405(g)(emphasis added).  The statutory language clearly gives the Commissioner the authority to extend the limitations period applicable to a claimant's case.  Although Mathews did not commence this action within 60 days of the denial of her request for review, the record indicates that the Appeals Council extended the limitations period for purposes of this case.  R. at 1.  The notice of this extension was dated April 30, 2009, and Mathews was given 30 days after her receipt of the notice to commence this civil action.  *Id.*  It is not clear when she received the notice.

1190-91 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must

consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, the Supreme

Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law.  That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.  If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.  To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Id.*, 332 U.S. 194, 196 (1947).  The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context.  *Fargnoli v. Massanari*, 247 F.3d 34, 44 n. 7 (3d Cir. 2001).  Thus, the Court's review is limited to the four corners of the ALJ's decision.

**ANALYSIS**

In his decision, the ALJ determined that Mathews had not engaged in substantial gainful activity subsequent to her alleged onset date.  R. at 9.  Mathews was found to be suffering from depression, anxiety, degenerative joint disease (with a bulging disc of the lumbar spine), anemia, and obesity.  *Id.*  Although these impairments were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii), they did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing").  R. at 9-11.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Mathews's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except she must avoid work requiring a high degree of dexterity. In addition, the claimant can perform only simple work instructions, and she must avoid work in close coordination or proximity to others. The claimant must also avoid direct interaction with the public and work involving intensive supervision. Finally, she must avoid work involving changes in the work setting.

R. at 11.

Mathews was 50 years old as of her alleged onset date, and 52 years old as of the date of the ALJ's decision. R. at 16, 24. She was classified as a "person closely approaching advanced age" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(d), 416.963(d). She had the equivalent of a high school education and an ability to communicate in English. R. at 16, 24-25. Given the applicable residual functional capacity and vocational assessments, the ALJ determined that Mathews could not return to her past relevant work as a shift manager, a community worker, an inventory clerk, a receptionist, a customer service worker, or a residential aide. R. at 15. Nevertheless, he concluded that she could work as a dietary aide or laundry folder. R. at 16. Strost's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). R. at 41-42.

In support of her Motion for Summary Judgment, Mathews argues that the ALJ failed to give appropriate weight to the opinions expressed by her treating physicians. Doc. No. 11 at 17-23. On October 23, 2007, Mathews's primary care physician, Dr. Anthony Nicassio ("Dr. Nicassio"), completed a physical residual functional capacity questionnaire detailing Mathews's alleged physical limitations. R. at 336-339. Dr. Nicassio indicated that, during the course of an eight-hour workday, Mathews could not sit, stand or walk for a total of two hours.

R. at 337.  He further opined that Mathews could not lift or carry ten-pound objects, that she was incapable of performing the demands of even "low stress" jobs, and that her impairments would cause her to miss more than four days of work per month.  R. at 337-339.

Mathews's rheumatologist, Dr. Noah Bass ("Dr. Bass"), completed a similar physical residual functional capacity questionnaire on January 17, 2008.  R. at 332-335.  Dr. Bass reported that Mathews could sit for only four hours, and stand or walk for less than two hours, during the course of an eight-hour workday.  R. at 333.  He indicated that she could "never" lift or carry objects weighing up to ten pounds, and that she could "rarely" lift objects of lesser weight. R. at 334.  Although Dr. Bass opined that Mathews could meet the demands of a "low stress" job, he noted that she would need to miss approximately four days of work per month.  R. at 333, 335.  Both Dr. Nicassio and Dr. Bass listed back and neck pain as the primary reason for Mathews's physical limitations.  R. at 332, 336.  They attributed her nonexertional limitations to depression and anxiety.  *Id.*

At the hearing, Strost testified that limitations such as those identified by Dr. Nicassio and Dr. Bass would preclude an individual from engaging in substantial gainful activity. R. at 42.  Mathews contends that the ALJ should have credited the opinions expressed by these two treating physicians.  Doc. No. 11 at 17-23.  The ALJ, however, based his ultimate residual functional capacity determination on assessments provided by a consultative medical examiner and two nonexamining medical consultants.  R. at 11-15.

On September 28, 2006, Dr. Abdul Q. Khan ("Dr. Khan") performed a consultative physical examination of Mathews in order to assess her ability to engage in work-related activities.  R. at 316-322.  In his medical source statement, Dr. Khan indicated that Mathews

could frequently lift or carry objects weighing up to 25 pounds, and that she had no limitations with respect to her abilities to stand, walk, sit, push and pull.  R. at 321.  Dr. Khan opined that Mathews was limited to only occasional bending, but that she had no other physical or environmental limitations.  R. at 322.

Dr. Michael J. Niemiec ("Dr. Niemiec"), a nonexamining medical consultant, reported on October 16, 2006, that Mathews could occasionally lift or carry objects weighing up to 50 pounds and frequently lift or carry objects weighing up to 25 pounds.  R. at 326.  He indicated that Mathews could sit, stand or walk for up to six hours during the course of an eight-hour workday, and that her pushing and pulling abilities were unlimited.  *Id.*  Dr. Niemiec identified no postural, manipulative, visual, communicative or environmental limitations.  R. at 327-328.  In rendering his opinion, Dr. Niemiec accorded "great weight" to Dr. Khan's examination findings.  R. at 331.

Dr. Raymond Dalton ("Dr. Dalton"), a nonexamining medical consultant, provided an opinion concerning Mathews's mental condition on September 14, 2006.  R. at 280-295.  Although some moderate limitations were identified, Dr. Dalton indicated that Mathews had no marked limitations.  R. at 280-281, 293.  He stated that her mental impairments would not preclude her from meeting "the basic mental demands of competitive work on a sustained basis."  R. at 282.

The opinions of Dr. Nicassio and Dr. Bass, if credited, would have warranted a finding that Mathews was incapable of engaging in even sedentary work.  R. at 332-339.[2]

---

[2]The regulations defining the term "sedentary work" provide:
Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as

In contrast, Dr. Khan's examination findings were consistent with an individual capable of engaging in light work. R. at 321-322.[3] Dr. Niemiec believed Mathews to be capable of engaging in medium work. R. at 326.[4] The ALJ ultimately determined that Mathews could engage in work classified at the "light" level of exertion that did not require "a high degree of dexterity,"[5] and that did not involve "work in close coordination or proximity to others," "direct interaction with the public," "intensive supervision," or "changes in the work setting." R. at 11. In so concluding, the ALJ rejected the opinions of Dr. Nicassio and Dr. Bass. R. at 12-13. According to the ALJ, Dr. Nicassio and Dr. Bass had failed to provide "laboratory or clinical

---

one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
20 C.F.R. §§ 404.1567(a), 416.967(a).

[3]The regulations defining the term "light work" provide:
Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
20 C.F.R. §§ 404.1567(b), 416.967(b).

[4]The regulations defining the term "medium work" provide:
Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.
20 C.F.R. §§ 404.1567(c), 416.967(c).

[5]At the hearing, Mathews testified that she was suffering from carpal tunnel syndrome. R. at 29. She stated that she was afraid to have surgery to alleviate that condition, and that she could not wear wrist splints that had been prescribed for her because they would exacerbate her pain. *Id.* Although the ALJ did not identify Mathews's carpal tunnel syndrome as a "severe" impairment in his opinion, he nevertheless accounted for this condition by limiting Mathews to work that did not involve "a high degree of dexterity." R. at 9, 11, 42. Because the ALJ incorporated a limitation resulting from Mathews's carpal tunnel syndrome into his residual functional capacity determination, any purported error on his part in failing to classify that impairment as "severe" would be harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987).

findings to support their conclusions." R. at 13.

Mathews testified at the hearing that she had begun classes as a part-time student at Community College of Allegheny County ("CCAC") in 2002. R. at 25. Her goal was to accumulate enough credits to enter a nursing program. R. at 26. From June 23, 2003, through June 1, 2006, Mathews worked as a senior shift manager for a drug and alcohol shelter designed to meet the needs of pregnant women. R. at 96. Her last day in that capacity directly coincides with her alleged onset date. R. at 94. At the hearing, Mathews testified that she had quit her job because of depression, crying spells, back pain, neck pain, an inability to focus, and an inability to write. R. at 29. Nevertheless, psychiatric treatment notes provided by the Pittsburgh Pastoral Institute indicate that the reason for Mathews's resignation was her desire to concentrate on her classes at CCAC. R. at 214, 360.

Documentary evidence provided by Cenk Chiropractic indicates that, as of September 14, 2007, Mathews was exercising on a regular basis. R. at 364. She reported that she was hoping to increase her endurance and flexibility for activities such as walking, swimming, and riding a stationary exercise bike. *Id.* At the hearing, Mathews testified that her treating physicians had recommended that she exercise in order to lose weight, and that she had responded to that suggestion by enrolling in an exercise course. R. at 35.

In determining that Mathews was capable of engaging in light work, the ALJ specifically referenced the treatment notes indicating that she had quit her job in order to concentrate on her academic endeavors. R. at 12, 14. He also observed that Mathews was enrolled in an exercise course at CCAC, and that she was hoping to enter CCAC's nursing program in the near future. R. at 12, 15. With respect to Mathews's nonexertional limitations, the ALJ noted that records

provided by Mathews's mental health providers had focused more on her plans to become a nurse than on "any serious limitations stemming from [her] depression or anxiety." R. at 14. When asked at the hearing whether she could perform the duties of a low-stress job that did not require her to work at a fast pace or to interact with a lot of people, Mathews responded by stating that she "could try" to perform the duties of such a job. R. at 38.

The crux of Mathews's argument is that the ALJ erred in failing to credit the opinions of Drs. Nicassio and Bass. Doc. No. 11 at 17-23. She relies on *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008), for the proposition that "it is improper for an ALJ to credit the testimony of a consulting physician who has not examined the claimant when such testimony conflicts with [the] testimony of the claimant's treating physician." Doc. No. 11 at 20. In this case, however, the ALJ's residual functional capacity determination was based, in large part, on the findings of an *examining* physician. R. at 11-14. The nonexamining medical consultant, Dr. Niemiec, indicated that Mathews could engage in *medium* work. R. at 326. Relying on Dr. Khan's examination report, the ALJ concluded that Mathews was only capable of engaging in *light* work.[6] R. at 11-15, 321. Mathews's reliance on *Brownawell* is misplaced. This is not a case in which an ALJ has relied solely on the opinion of a nonexamining medical consultant in order to discredit the opinion of a treating physician.

Dr. Khan's examination findings differed drastically from the opinions of Dr. Nicassio and Dr. Bass. It is axiomatic that where such a conflict in the evidence exists, it is the

---

[6]Because the ALJ's determination that Mathews was capable of engaging in light work is "supported by substantial evidence," it is inconsequential that the Medical-Vocational Guidelines contained in 20 C.F.R. Part 404, Subpart P, Appendix 2, would have directed a finding of disability in this case if Mathews had been capable of engaging in only sedentary work. Doc. No. 11 at 6-7.

11

prerogative of the ALJ to decide which opinions to credit and which opinions to reject. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991); *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985). The United States Court of Appeals for the Third Circuit has consistently recognized that an ALJ may reject the opinion of a treating physician when that opinion is contradicted by other probative medical evidence. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988). Because consultative examiners often possess both the expertise to render reliable opinions concerning a claimant's work-related limitations and the impartiality to do so in an objective manner, the well-supported report of a consultative examiner ordinarily constitutes "substantial evidence" upon which the Commissioner may base a residual functional capacity assessment. *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985). Consequently, the ALJ's residual functional capacity determination is "supported by substantial evidence" within the meaning of 42 U.S.C. § 405(g).

## **CONCLUSION**

In evaluating an individual's application for benefits under the Act, an ALJ "is free to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). In this case, the ALJ found a medical source statement provided by a consultative examiner to be more credible than residual functional capacity assessments supplied by Mathews's treating physicians. It was the ALJ's prerogative to decide this dispositive question of credibility.

Accordingly, it is respectfully recommended that Plaintiff's Motion for Summary Judgment (Doc. No. 10) be denied, that Defendant's Motion for Summary Judgment (Doc. No. 12) be granted, and that the Commissioner's administrative decision be affirmed.

In accordance with the Magistrates Act, 20 U.S.C. § 636(b)(1) (B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation are due by May 21, 2010.  Responses to objections are due by June 4, 2010.


May 7, 2010                                                                  s/Cathy Bissoon
                                                                             Cathy Bissoon
                                                                             United States Magistrate Judge

cc (via email):

All Counsel of Record